FRANK PHILLIPS, plaintiff in error, *vs.* THE STATE OF GEORGIA, defendant in error.

The only evidence of the prisoner's connection with the burglary being that he was seen to pass by the house some hours before the offense was committed, and that several months thereafter, goods stolen from the house on the occasion of the burglary, were found in his possession, the case made is sufficiently answered by evidence of previous good character and the testimony of an unimpeached witness that the goods were delivered to the prisoner by another person in pledge for a sum of money, the prisoner himself having given substantially the same account of his possession and no con tradictory account.

Criminal law. Burglary. Circumstantial evidence. Before Judge HOPKINS. DeKalb Superior Court. September Term, 1875.

Reported in the opinion.

HOWELL C. GLENN, for plaintiff in error.

Phillips *vs.* The State of Georgia.

JOHN T. GLENN, solicitor-general, for the State.

BLECKLEY, Judge.

Burglary was committed by some unknown person.   The occupants of the house were absent, having left at about one hour before sundown, and having returned the next day about one o'clock in the afternoon.   During this absence some one entered the house by removing from a nail the end of a string which secured the door, stole therefrom five quilts worth $20 00, and went away, leaving the door fastened as it was before. This was in March.   In July thereafter, four of the quilts were found in the prisoner's house.   The fifth had not been discovered up to the time of the trial.   Prisoner's house was searched under a search warrant, and the quilts found— two in a chest and two in a trunk.   He was absent at the time, but his family were there.   The account he afterwards gave of his possession, and the one given to the jury in his statement at the trial, was that he received the quilts from Tom Jones, for $5 00 which he let Jones have, the arrangement being that they were to be returned if the money was refunded, but otherwise, they were to be his property.   He proved by his half-brother that this account of the matter was true, and four or five witnesses testified to the prisoner's good character. There was no evidence to the contrary of this, nor was the brother either impeached or contradicted.   It appeared that about twelve o'clock of the day upon which the prosecutor left his house, the prisoner passed near it, along the road; and that circumstance, with the possession of the stolen property, was all that went to show his connection with the burglary.   He and the prosecutor both lived in the country, about one mile and three-quarters apart.

The circumstance that the prisoner passed along the road, by the prosecutor's house, about twelve o'clock in the day, is of little or no weight against him.   The prosecutor remained at home until an hour before sundown, and up to that time no crime was committed.   The house stood on the roadside,

and, slightly fastened as it was, might have been entered by any one who chanced to pass from the time it was left until one o'clock the next day, when the prosecutor returned to it and found his goods missing. What bears upon the prisoner is that the quilts were found in his house. That is the criminating fact against him. But then they were taken in March and not found till July. That tends to lessen the force of the possession, though, perhaps, considering the nature of the property, its force is not wholly destroyed. Quilts are articles that would be slow to circulate, and in regard to such articles, the possession, to raise a presumption of guilt, need not be so recent as where the property is of a more current kind : 3 Greenleaf's Ev., sec. 32; 1 Phillips' Ev. Cowen & Hill's Notes, 425, note 325. But let it be conceded that the *onus* was cast upon the prisoner to vindicate his possession. He did so by proving by one witness how he acquired it, and by several others that he was a man of good character. In the note above cited from Cowen & Hill, it is said, on page 427, that the better opinion seems to be, that the presumption arising from possession alone. is completely removed by *the good character alone* of the prisoner. Certainly good character, together with the testimony of an unimpeached, uncontradicted witness, ought to remove it. It does not appear that the prisoner denied his possession or refused to account for it, or gave any false or contradictory account. The transaction with Jones, as explained by the witness, partook of the nature of both pledge and sale, and when the prisoner said that he bought the quilts from Jones, he stated nothing inconsistent with it. If the prosecution had been for receiving stolen goods, knowing them to be stolen, the conviction might not have been improper, inasmuch as Jones' possession most probably appeared more than suspicious, and the value of the goods was so much above the amount the prisoner gave for them. But in respect to the offense of burglary, there is some doubt, upon the authorities, whether the possession of goods stolen from the building will, of itself, even when recent and unexplained, so identify the prisoner as to justify a

conviction: 1 Whar. Cr. L., section 729; 1 Parker's C. C., 447; Burrell on Cir. Ev., 455–6; Cowen & Hill's Notes, 432, note 329. It is not clear, upon principle, why it should not, as the perpetrator of arson may be identified by such means, (3 Greenleaf's Ev., section 56,) and as there is a general presumption that the fruits of a crime are with the criminal: 1 Greenleaf's Ev., section 34; 3 *Ibid.*, section 31. As to larceny from the house, see 24 *Georgia Reports*, 32. Upon this question we, at present, decide nothing. What we rule is, that, with the showing made by the prisoner, he was improperly convicted—the verdict was contrary to the evidence, and the court should, on that ground, have granted a new trial.

We advert to the newly discovered evidence only for the purpose of remarking that we are unable to see why full diligence would not have found it out in ample time for the trial.

Judgment reversed.