## Moss v. The State.

The verdict for larceny from the house was warranted by the evidence.                                                *Judgment affirmed.*

December 28, 1891.

Criminal law. Larceny from the house. Verdict. Before Judge Milner. Whitfield superior court. April term, 1891.

Defendant was indicted for burglary. The house which it was charged he burglariously entered, and from which it was alleged he took and carried away with intent to steal a pair of men's "pants" and other things, was the house of one D. A. Smith. He was found guilty of larceny from the house, and moved for a new trial upon the grounds that the verdict was contrary to law and evidence and without evidence to support it. The motion was overruled, and he excepted.

v 88-16

The evidence for the State, in brief, was: Defendant lived, at the time of the alleged offence, about fifty yards from Smith's house with his mother and father, and that family was the nearest to Smith's. Smith had a coat and vest to match the pants, which were introduced upon the trial, as well as a pair of pants alleged to be the pair which were stolen. The pants were taken away from Smith's in March or February. Smith was away from home that day, and Mrs. Smith left the house for two or three hours, bolting all the doors but one, the back door, which was buttoned on the inside. When she came back the front door was unlocked. When she left home and the pants were last seen in the house, they were hanging up in the kitchen; when she came back everything was just like she left it, and she did not miss them until she went for them after that, which was supposed to be about two weeks after they had been stolen. She went off two or three weeks afterward, and when she returned, missed other things mentioned in the indictment, which she has never found. Defendant was never seen by Smith or his wife about the house except when he came on business, and Mrs. Smith never heard him accused of stealing before. She was positive she had not been away from home except the times mentioned above. Smith spoke to defendant's father about the pants and told him if he could find them to do so for him, and the father said he would try to find them and expressed a willingness to hunt for them. The latter part of June or first of July following the time when they were missed, the defendant was seen with them on. He was arrested and told he was charged with stealing the pair of pants he had on (which looked like the pair in court), and he did not make any answer, but his mother did the talking and said that her son-in-law gave them to her. Smith testified that he knew the pants by the buttons, the lining; recognized the hip pockets and

the way they were made; they had been changed, had been cut off since they were made; he did not know there was any difference in the buttons and other buttons just like them; he knew the buttons, but could not explain the difference; there might be plenty of buttons in the country just like these; he supposed the factory that made these made more just like them; he had no mark on these buttons but knew in his mind that they were the ones; did not know why, but was positive they were the same buttons; all he swore to them by was their looks and size; the pants were his pants, he knew them by their looks; he had seen other lining like the lining; and he knew the pants from the buttons and the general appearance.  Mrs. Smith testified that she helped make the pants, sewed on the buttons, did part of the work on the pants, and recognized "that" as her sewing; she sewed the buttons on both the coat and vest; there were plenty of clothes made just like "those" pants, plenty of brass buttons just like "those," plenty of lining just like "that"; there would be a difference in the sewing on of two buttons; she thought the bottom of the legs of this pair of pants had been cut off.

For the defendant the evidence was: Si Adams, his brother-in-law, some four years before, while running on the Savannah, Florida & Western railroad, found the pants in a satchel full of clothes, which some one unknown left on the train between Jacksonville, Fla., and Waycross.  He had to wear a uniform all the time, and having no use for them, gave them and other clothes to his mother-in-law.  The pants in court were the very pants he found and gave to his mother-in-law.  He did not want them and did not try them on.  He found other clothes in the satchel.  He also gave to his mother-in-law an old coat which she cut over and which defendant wore to school, and she saved the pieces to patch the pants with if they wore out.  She got scraps (in court)

off the old coat and patched defendant's father's pants with the pieces, putting the little pieces (in court) in the rag bag, and that was how she came to have them now. She gave the vest away because it was too large for defendant, but did not know who 'she gave it to. The pants that she patched with pieces of "this" kind of goods are worn out. Defendant worked at the Lewis House at the time Smith stated to defendant's father and mother that the things were missing from his house. He worked at the Lewis House from along in February until the 1st of April, was at work there during the time these pants were said to have been stolen, went there in the morning about four o'clock and stayed there until after dark. Smith did tell defendant's father about losing things out of his house, and defendant's father said he would keep a lookout for them. A witness testified that defendant is industrious and he had never known anything wrong of him; and that defendant had plenty of opportunities to steal at witness's house and never did, to witness's knowledge. Scraps of cloth like the pants were put in evidence.

On the part of the State, in rebuttal, one witness expressed the opinion that the pants had been cut off at the bottom and the scraps came from the bottom of the legs, but he could not swear that positively. Mrs. Smith testified that the pants were just turned up and hemmed at the bottom, and she did not know whether the pieces came from the bottom or not.

Maddox & Starr, by brief, for plaintiff in error, cited 56 *Ga.* 28; Gr. Ev. §32.

A. W. Fite, solicitor-general, *contra*, cited Rosc. Cr. Ev. §20 *et seq.*; Bish. Cr. Pr. §§741 *et seq.*, 1253–4; 14 Am. R. 342; 65 *Ga.* 369; 68 *Ga.* 823; 81 *Ga.* 744.